Let me call the final case. We'll take up People v. Rainey. The argument for the appellant, when you're ready. Good morning, Your Honors. My name is Linda Olthoff, and I represent Appellant Rainey. May it please the Court, counsel. I intend to focus my comments today on primarily issues 2 and 3 that were raised in the brief. The jury's resolution of Albert Rainey's guilt or innocence in this case came down to its assessment of the credibility of the witnesses. There's no physical evidence, no sign of memorialized confession, and nor are there witnesses. The impact of counsel's errors in this case was to deprive Albert Rainey of a jury that could fairly and properly deliberate his case. Those errors included failing to subject the state's use of prior consistent statements in an adequate Section 115-10 hearing, allowing Detective McElroy to give his own professional opinion as to MC's veracity and to the guilt of the defendant. Finally, counsel failed to see that the jury was properly instructed as to how it should consider these prior consistent statements. As to the failure to conduct a full 115-10 hearing, we know that prior consistent statements generally are inadmissible, and that is because the danger of such statements is that the jury is likely to hear and give more credence to that which it hears repeated most often. But there is an exception in child complainant cases, as long as these prior consistent statements are subject to a reliability hearing prior to trial. That was not done in this case. Counsel allowed the state to go forward on a cursory proper as to what these prior consistent statements might consist of. He fatally elicited the time of the statements and an outline of the contents without exploring the circumstances of the making of the prior consistent statements. As a result, without being fully tested as to their reliability, the jury heard these prior consistent statements. They heard, repeatedly, MC's allegations through the video, through Detective McElroy's testimony, and through the grandmother's testimony, all to corroborate MC's testimony. Moreover, counsel then went on to explore these things, the reliability of the statements, in front of the jury. And as in People v. Mitchell, the time to explore the reliability of the statements is before the judge. You don't want to explore these issues in front of the jury for the first time. And what happened in this case was that Detective McElroy was able to convey to the jury how his techniques were not suggested, because counsel is exploring this for the first time. Detective McElroy insisted, I did not use suggested techniques, I did everything correct. And so, this reliability that was not tested by a judge hurt Elder Ernie's case. And counsel continued to allow Detective McElroy to give his assessment of the credibility of the witnesses. Detective McElroy vouched for the credibility of MC. We know it's improper for a witness to give his opinion as to the veracity of another witness, or of an ultimate finding, or an issue that is for the jury to decide. Here, it was not just any witness. It was the lead detective in the case that told the jury that MC is credible. Based on what she told me, based on my experience in interviewing child witnesses, I believe she was credible. No reason to believe she was lying. And therefore, I went out and arrested Mr. Ernie. Then, he went on to tell the jury that he only gets confessions from guilty people. His goal is to get the truth. And again, he bolstered himself by explaining to the jury he's interviewed hundreds of suspects, and he's done hundreds of these types of cases. Counsel, refresh my recollection. Was this on direct, or on cross, or both? Both. So, when the state initially elicited this testimony from Detective McElroy as to do you get people to confess, only if they've done it, there's no objection by counsel. In fact, the confession in this case, it's questionable whether you could even characterize it as a confession, where basically, Mr. Ernie gave an acknowledgement to the detective when he asked if he had done these things. After going through much discussion, the detective mentioned the allegations, told him they have physical evidence against him, even though they did not. Told Mr. Ernie, well, you know, you could probably get therapy if you just admit to what we did. You know, the judge maybe won't take a punitive approach if you just are forthright with us. And is this the only time that this really happened with this girl? Yes. That was the extent of the confession. Defense counsel tried to bring out that the interviewing detective used deception and minimized the potential charges and the potential sentence. And this was a question for the jury to determine how this impacted the reliability of the confession, purported confession. And yet, McElroy just told him, I never get false confessions. I have a 100% accuracy rate. I never, nobody's ever confessed to me something they hadn't done. This is a jury question. And this goes to the ultimate question of guilt or innocence. It's for the jury to decide if MC was credible based on what they'd seen. It's for the jury to decide if they believe Albert Ernie had done it. It was not for the lead detective to tell them, I believe this girl is credible. I believe there's no evidence of her being deceptive. I only get confessions from people that have done this crime. He completely took away from the province of the jury the decision as to the ultimate issue in this case, who to believe and was Mr. Ernie guilty. By the time the case went to the jury, it was heavily weighted against Mr. Ernie. And the counsel made yet another crucial error in that he failed to see that it was properly instructed as to how it should consider these prior consistent statements. This was especially problematic in this case because we maintain that there was no proper hearing testing their reliability. And so it's especially important that the jury be instructed how it should consider these. In addition, you had Detective McElroy telling the jury who to believe and how it should weigh these witnesses. And so it was especially imperative that the jury be instructed how it should consider these prior consistent statements. And that they needed to consider it in light of the maturity and the age of the complainant at the time she made these statements. It is not enough, even if the jury receives IPI 1.02, which instructs it how to consider the believability of a witness. Because, first of all, that speaks to the believability of the witness. 11.66 speaks to how to consider the statements themselves, the prior consistent statements. In addition, the jury, when it received 1.02 in this case, did not receive an instruction to consider her age when considering how reliable or how it should consider these statements. Let me ask you about the 115-10 hearing and how that happened. I've not read the transcript of that hearing, but the state made a proffer. And your objection with that is there were not specific circumstances regarding when these statements were made by the child. Tell me about what detail was lacking. And I'm just maybe speculating, trying to, why didn't defense counsel raise these questions? I'm not asking you to speculate on that, but it goes to, could the defense counsel have seen those specific circumstances through discovery documents? Or are, in fact, new and therefore didn't raise that question? Or does that make any difference? No, I don't think that that's possible, because one of the circumstances that was explored, or that was not explored, was the very initial origin of these statements. MC made a comment to a friend at the school bus who told her mother, who then called MC's grandma. So it's kind of in the way, so we don't know anything about the circumstances in that case. And it comes in context. So does that come out within the testimony? The grandma. She told a friend. A friend told her mother. Mother told grandmother. I remember seeing the friend calling grandmother, and then grandmother took it from there. Right. But how did that, where did that come out in the record, what she just stated about the little girl told a friend on the bus who told the mother who told the grandmother? The grandmother testified to that. Okay. Yes. And, in fact, for this to be a strategy for counsel to do this, or if he had known about the circumstances and discovered documents, that's rebutted by the record, because, first of all, he asked Detective McElroy, how do we know that this prompt outcry is reliable? You can finish that. Okay. How do you know this prompt outcry is reliable? And Detective McElroy gave yet another opinion and said, I have no reason to believe that this grandmother was not reliable or would have prompted the witness to say this. Thank you, Counsel. And you'll have some opportunities for rebuttal. Argument for the State. Good afternoon, Your Honor. This is Patrick Daly for the State. May it please the Court, Counsel? I guess it is afternoon already. I'm going to try to go in order of counsel's arguments here, and we'll start with the 115-10 issue. Obviously, the typical case of a 115-10 hearing involves testimonial evidence. That's typically how you see it. But it's not a prerequisite to a 115-10 hearing. What has to be is a hearing outside the presence of a jury before a trial starts, typically, where a court makes a determination based upon evidence presented to it about time, circumstances, et cetera. The statutory reliability findings that allow for this type of hearsay evidence to be admitted subsequently, okay? Testimonial evidence, of course, is not the only way evidence is presented. And stipulations, proffers, which here I characterize more in the nature of an offer of proof, if you will, are also ways to introduce testimony, introduce evidence. And that was the way, apparently, the Defense Counsel and the State had intended to present this to the Court for it to make its findings. So I'll make a couple points here, okay? First of all, the question has been raised by the defendant, and it's important to note here that we're talking about an issue of ineffective assistance to counsel. So you've got, you know, the two-pronged standard. You've got, you know, this is an objectively reasonable choice by counsel, and it wasn't the defendant prejudiced by it. It's important for this Court to keep those two prongs in mind as we progress through a lot of the issues that the defendant raises in this appeal, because almost all of them are constructed around a claim of ineffective assistance to counsel. From a tactical standpoint, there are reasons that one might not want to challenge at the time of a 115-10 hearing in court testimonial evidence by way of cross-examination. Obviously, a lot of this is speculative, but that's typically how these cases shake out when you look at them in the reported decisions when we talk about strategic choices, because sometimes strategic choices are just not being known. They're off of it. But what you have here is a case where counsel may reasonably say, well, I don't want to cross-examine McElroy in the context of this hearing when I think I've got things I can use against him in a trial, where we're not worried or concerned about what the Court is going to exercise its discretion to allow some type of evidence in, where I think that this particular judge or this particular evidence or what I've seen in discovery is going to likely lead this Court to allow the admission of this and state it in the bag from trial, cross-examine McElroy, and then make your arguments to the jury, which, as 12 people, have to decide beyond a reasonable doubt whether the defendant had committed this offense or whether it should attribute reliability to these statements that the state is trying to use substantively against the defendant. It can be a powerful tool, sometimes what juries consider versus what a judge considers. And so there are tactical avenues that defense counsel may have to say, okay, we'll let the state go by this. But I think as we move from there, we also look at this in terms of prejudice. And, you know, I've cited some authority. It's actually authority where a court had held that the testimony was improperly admitted. But the analytical framework is really what I want this Court to look at. I believe it was the Morgan case, where the Court said, okay, well, there was not a 115-10 hearing, and the argument had been raised. There was none at all, actually. I mean, it's not even like this case. I mean, they just didn't even get to any kind of argument about whether the testimony was admissible under Section 115-10. The Court said, well, what we do is we look at the trial testimony to assess the defendant's prejudice prong of his claim of ineffective assistance of counsel. And what we have here, what this Court will have, obviously, is we'll have the opportunity to have detective McElroy's testimony. And we'll also have a videotape. It's a videotape. The recording of the interrogation, excuse me, of the interview of the minor, the victim. And, you know, this Court can make its own, I think, independent interpretation of whether or not the Court's decision was correct in terms of whether there was sufficient condition of reliability. Now, defense counsel here talks about the circumstances of that, and that by foregoing a full-blown evidentiary hearing, the defense counsel sort of lost the right to challenge this evidence. And I think that that would relate somewhat to what I'm saying here, that the evidence as it presented manifested a means of challenging that testimony based upon what was on the video. I would dispute that proposition, first of all. I think that when this Court looks at the video, it will see pretty much a standard, you know, give and take between Detective McElroy and the victim. There was not any coercion or pressure, no words were put into her mouth. There was a usual sort of like, well, let's talk about this, let's talk about that. But I don't think I've ever seen a forensic interview that didn't have that to some degree, because that's just how you deal with young people when you talk to them. When we talk about circumstances, my understanding of that relates to the circumstances of the interview itself and not what leads up to it, I think, as counsel argued here. In other words, just as I said before, you know, it's interesting the cases that I relied on really held that the evidence is inadmissible. The basis for inadmissibility related to the circumstances, which were the fact that it was clear that the officer was putting pressure on the minor to make statements, was putting words in the minor's mouth, etc. And I don't think this Court, when it looks at the recording of this interview, is going to draw the same conclusions. So I think that in terms of ineffective assistance of counsel, the defendant cannot establish, at a minimum at least, a prejudice problem. And the inability to establish any of the problems defeats the claim of ineffective assistance of counsel. With regards to the vouching for the credibility of the witness or the victim, it's an interesting issue. At its core, the defendant's argument is correct that a witness cannot vouch for the credibility of a witness. Where it kind of comes into some discussion here, you'll note that when Detective McElroy was being questioned by the State, it had been brought out after discussing his interview with the minor, what he did next. And he sort of blurted out, well, after having determined, you know, she was credible, I went ahead and arrested the defendant. And then, of course, an interview with an interrogation of the defendant occurred thereafter. So it was presented not so much in the context that, well, this is like, you know, you, the jury, should find this individual credible. It was more in the nature of this is the progression of my investigatory steps in the case. Now, the defendant cites a case called People v. Crump. People v. Crump is a great case for the defendant. It seems to say a lot of what counsel would want this court to subscribe to. However, Crump has not been without criticism and has stabilized here by a case called People v. Degorski. And really where it sort of comes down to, that there's a distinction in those cases, and Degorski's sort of criticism of Crump relates to the manner in which this credibility assessment, if you will, is presented to him during the course of the trial. You'll note when you look at Crump, there's this dissenting opinion. The dissenting opinion says, this is not something where he was really vouching for the credibility to invade the province of the trial. In fact, it was merely describing a step in the investigation. But what Degorski says is that, well, there's a distinction between an assessment of credibility in a past context such as that versus a present context where a jury is being asked to, or is being told that I know, I was actually here, she's a believable witness, and you should believe her as well. Those are two circumstances that are distinguishable under the Degorski standards in terms of the type of harm that this type of evidence presents and whether it actually constitutes inadmissible credibility assessments that invade the province of the jury. A closer analog to the type of inadmissible evidence would be those cases where psychiatrists or psychologists are called to testify, and they present psychological, psychiatric testimony that basically says to the jury, you should find someone believable or not believable because they exhibit these types of characteristics. That's not the type of thing that this jury heard. It didn't hear any of that. And I think that as we're, again, talking about the thing that would affect the assistance of counsel, when we look at this in the sense of whether there was prejudice, this was an instance where, I guess, even if we acknowledge the fact that this should not have been brought up, and, again, it wasn't brought up by the state specifically, but it was stated, and therefore the state's responsible for it, that it was just a brief reference. It was not something that was brought out during opening or closing or even a further example by the state in this case. So even accepting that it would constitute error was not error of such magnitude that should prompt this court to reverse the defense conviction. I ask this court to affirm on these and all arguments in the state's brief. Thank you, Your Honor. Thank you, counsel. Rebuttal argument. As to the 115-10 hearing, and this goes a little bit to the question you asked just before I sat down, could there have been some strategy here from counsel? Here, counsel actually tried to reopen the hearing, and he tried to call the detective back. And after this proffer had been made and the court made the decision that this was going to be admissible, defense counsel said, I think there's reason to believe that he may have used suggestive techniques. Let's call him back, and then let me call an expert witness to testify as to the suggestiveness that the detective may have used. So it wasn't like counsel was trying to avoid exploring something in a pretrial hearing. Certainly that is going to be much less damaging when you explore that before a judge than before a jury, as he did here. So you're saying he had agreed to having this presented by proffer, defense counsel, but then immediately after that proffer, he wanted? Not immediately after. In a subsequent trial proceeding, he first said, I want to bring in an expert to testify about the suggestiveness of the techniques that the detective used in his interview with the little girl, and the court denied that motion, and defense counsel said, then I would like to reopen the 11510 hearing and call the detective to explore the suggestiveness of his techniques. The court never really, I don't think, ruled on that, and the defense counsel didn't bring that up again, and they let it go. And in fact, the counsel says that this court can look at the video itself, and that is true, and it's a standard give-and-take discussion between the detective interviewer and the young child, but counsel believed that there was suggestiveness in this, and this was a disputed issue, and this was a question for the jury to decide, and so certainly there was prejudice here in failing to subject these statements prior to trial, because we don't know that there was not some suggestiveness used, and this was a question that should have been gone to a judge before the jury was given these statements. And as to the... Not to belabor this, but one other question. I need to make sure I understand the sequence of the timing of this. So defense counsel had seen the video and then asked the court, I'd like to reopen the 15-10 hearing so I can inquire of the detective about the circumstances to get to suggestiveness. Yes. I believe how it went was after the proffer by the state and the subsequent proceeding, counsel moved to call an expert, and the court denied that to reopen the hearing to call a detective. And my recollection is that the court said I'll take it under advisement, ultimately denied his motion to call an expert, and then defense counsel never again brought up whether he... or asked again to reopen the hearing, and he just kind of let that go, which we would say contributed and compounded this error. Okay. And then as to the detective's comments on the credibility of MC and his belief on the defendant's guilt, first of all, it was unnecessary for the detective to use this as a progression of the steps for the course of his investigation. There's no reason that they had to know he wasn't arrested already because he found MC to be credible. And in the Dvorsky, the comments made were unsolicited. Here we had the state's attorney eliciting comments regarding the detective's belief in his guilt and the detective's perfect record in securing true confessions. And so it wasn't just a brief unsolicited statement. This was pervasive through the trial's comments as to MC's credibility and the defendant's guilt. The fact that he said, oh, this is just about her prior statement and my belief as to her credibility back when she gave the statement as opposed to her testimony, MC's giving the same general allegations back then in a trial. Of course the jury's going to infer that if you believed her then, you believe her now. If you had reason to change his perception on her credibility, you probably wouldn't be testifying for the prosecution. Was there prejudice? Absolutely there was prejudice because this went to the core issue of the case. This took away a jury question. When you have a detective, the lead detective in this case, telling the jury who to believe and that the defendant is guilty, there is error. Thank you. Thank you, counsel. We'll take this case under advisement. Court will be in recess.